HARRIS, Respondent, v. LYONS et al., Appellants.

(138 N. W. 295.)

1. Trial—Claim and Delivery—Order of Proof—Reply—Error Without Prejudice.

In claim and delivery for a team of horses, under complaint in ordinary form, plaintiff was only required, in proving his case in chief, to prove ownership of horses, demand therefor, and defendant's refusal; he was not bound to prove facts set up in the answer and in his reply in defense to those alleged in the answer, but should properly have met the proofs under the answer, by proofs of facts alleged in the reply, without any reply. Held, further, however, that no prejudice resulted to appellants by the irregular course pursued by plaintiff in first proving facts under all the issues; as the evidence in that event

would have been substantially the same, and the introduction
of evidence to prove the whole transaction was to the advantage
rather than the injury of defendants.

2. **Contract—Party Not Signing, Effect—Conditional Signature.**

Where a contract provided that it should not be "binding un-
til all the parties above mentioned have signed the same," it
was not binding upon any of the parties named therein.

3. **Evidence—Objections to—Proof of Estoppel Not Plead.**

An objection to evidence tending to show waiver of a condi-
tion in a contract that it should not be binding unless signed
by all parties named, which objection involved an estoppel
and was made merely on the ground that the evidence was in-
admissible under the pleadings, was insufficient to raise the
objection that it was inadmissible because no estoppel had been
plead.

4. **Evidence—Finding of Facts by Jury—Presumption to Support Judgment, On Evidence Not Duly Objected to.**

It will be presumed on appeal, in support of a judgment for
plaintiff, that the jury found certain facts as claimed by plain-
tiff, on evidence which would have been inadmissible had proper
objection been made to it.

5. **Contract—Non-execution of Conditional Contract By All Parties —Equitable Estoppel.**

A supplemental contract recited the sale to plaintiff and R. of
certain machinery by defendants, and provided that it should
not become binding until all parties named therein signed it;
but after its execution by all except R., one of the defendants
stated to plaintiff it made no difference whether R. signed it,
that it was binding on defendants and plaintiff in any event,
and that defendants did not rely on R's liability upon the sup-
plemental contract, but only on the original contract; and plain-
tiff, acting upon such representations, proceeded to carry out
the supplemental contract. Held, that defendants were estopped
from claiming the invalidity of the supplemental contract by
failure of R. to sign it.

6. **Sales—Test of Property Sold—Sufficiency of Evidence—Working of Machinery.**

Where the evidence concerning whether farm machinery sold
worked satisfactorily to plaintiff purchaser, and as to whether
plaintiff fairly tested it, was conflicting, it was for the jury,
and where it was submitted under proper instructions on those
heads and on other elements involved, the verdict for plaintiff
will not be disturbed.

7. **Claim and Delivery—Admission of Evidence—Parties—Preju- dicial Error—Waiver of Contract.**

In claim and delivery for horses, which plaintiff agreed to

18—Vol. 30, S. D.

exchange with defendant for machinery under a contract to which R. was originally a party with plaintiff, though his signature to a supplementary contract relating to the machinery had been waived by defendant; plaintiff claiming the machinery would not work as agreed; held, that testimony by R. that plaintiff was the purchaser of the machinery, and that R. did not receive any consideration for signing the contract, while improperly admitted, was not material to any issue; R. not being a party to the action; since its only effect would be to throw light on the intent of the parties in waiving the condition of the supplementary contract as to signing same by all parties including R.

(Opinion filed October 25, 1912.  Rehearing denied January 6, 1913.)

Appeal from Circuit Court, Spink County.  Hon. ALVA E. TAYLOR, Judge.

Action by Frank Harris against B. F. Lyons and D. W. Lyons, co-partners as Lyons Brothers, in claim and delivery for horses, alleged as having been exchanged as part consideration under a contract of purchase by plaintiff of farm machinery under contract between plaintiff and Nichols & Shepard Company, of which contract defendants were assignees; and under a supplemental contract between plaintiff and defendants.  From a judgment for plaintiff and an order denying a new trial, defendants appeal.  Affirmed.

*Bruell & Morris,* for Appellants.

If the admission of all of this foreign matter was improper, and not within the issues of the case, then error is presumed.  A violation of the rules of evidence always presumes error.  Plymouth Co. Bank v. Gilman, 4 S. D. 267.

We call the court's attention to errors at law set forth in assignments numbered 2, 3, 4, 5, 6 and 7, all of which relate to the identification of Exhibits "A" and "B," and what was said by the parties at the time they were signed.  These questions should not have been allowed; they are not within the real issues in the case, and while it is possible that some of this matter, under certain circumstances, might have been proper upon rebuttal, yet there is no rule of evidence that would justify or allow the same to be introduced at the beginning of the trial.

For instance, assignment 7, the court allowed the plaintiff to respond to the following question: "After this agreement, marked Exhibit 'A,' was signed, what, if anything, was said by Mr.

Barney Lyons in reference to having Mr. Rowe sign same?" And the witness replied: "He said it don't make any difference whether Mr. Rowe signs it or not." Now, plaintiff did not plead this contract, Exhibit "A," but at the trial he seeks to offer it in evidence and then vary and contradict its express terms by parol evidence. This contract, Exhibit "A," stated that it was not to become operative until it was signed by Harris, Rowe and Lyons. This is supported by the fact that after Harris and Lyons had signed same, both copies were left with Harris' attorney to be forwarded to Rowe, and Lyons never received a copy of the contract until after this action was brought, and did not know but what Rowe had signed same. The admission of this exhibit was unwarranted, and would naturally change the issues of the case, and tend to confuse and prejudice the jury, and that was its evident purpose.

Furthermore, the admission of this testimony relative to the operation of the plows was error, for if Exhibit "A" was admissible in evidence, and ever became operative, then all of the incidents relating to the operation of the plows and engine prior to the date of the execution of Exhibit "A" on September 14th were certainly incompetent, and should not have been received by the court, because if Exhibit "A" stands and became operative, so that either of the parties were bound thereby, it appears from said exhibit that the plows were satisfactory to Harris and Rowe, but that they had not had sufficient opportunity to test the engine and ascertain if it was according to contract. (See Abs. Fol. 208).

Then it is further stated in Exhibit "A" that Harris and Rowe might have three days to test the engine to ascertain whether it would pull the plows in a good and workmanlike manner when plowing with eight bottoms at a depth of from four to six inches, and if the engine did not do that, then the horses in controversy should be returned to Harris and Rowe. Exhibit "A" further provided that it should be supplementary to Exhibit "B," and should not become binding until all of the parties had signed the same.

Now, there can be no question but that this suit is not brought upon this contract, Exhibit "A," and in order to successfully consider and rely upon Exhibit "A," it would have been necessary for plaintiff to bring his action upon this contract, and plead

the subsequent modification made thereto, but inasmuch as this was not done, we do not believe that Exhibit "A" ever became admissible in evidence, and that its admission, if it was not competent, was certainly reversible error.

The authorities in support of our position upon this point that foreign and incompetent evidence not within the real issues was inadmissible and was error, are very numerous. We will cite a few of the leading decisions in support thereof. Crane & Ordway Co. v. Jones, 113 N. W. R. 81; Orr v. Miller, 98 Ind. 443; Thomas v. Black, 23 Pac. 1037; Montgomery St. Railway Co. v. Hasting, 35 So. 412; Phillips v. Postal Telegraph Co., 43 S. E. 587; 4 Ency. of Law and Proc. 491; Baird v. Gillett, 47 N. Y. 187.

Applying that rule, we think the jury could reasonably have placed such construction upon the letter of Hayward that the defendant would be prejudiced by its reception. A new trial must be granted. ·Yankton County v. Rosstuscher, 46 N. W. R. 575 (Dak.); McMillan v. Atchinson, 54 N. W. R. 1031 (N. D.); Fleming v. Thorpe, 19 L. R. A. (N. S.) 918.

Error Presumed.

This court has several times held that where incompetent evidence was admitted, error was presumed. Willer v. Hildebrand, 19 S. D. 50; Fallon v. Rapid City, 17 S. D. 570; Chapman v. Green, 18 S. D. 521; Starkweather v. Bull, 12 S. D. 146; Miller v. Durst, 14 S. D. 593; Armour & Company v. Russell, 6 L. R. A. (N. S.) 605; Halsey v. Bell, 62 S. W. 1089. .

We call particular attention to·assignment number 76. This question ·was asked the witness Rowe: "Did you receive any consideration for signing the papers, which you did sign in Lyons Bros.' office on that day?" This question probably refers to the signing of Exhibit "B" and the duplicate thereof. The witness answered over defendants' objection, "No, sir; I did not." Now, this is clearly error. In the first place, the question of consideration was not an issue in this case. Harris and Rowe both signed Exhibit "B." This is not an action to rescind that contract, but the admission of this declaration of the witness in evidence was highly prejudicial, and would lead some jurors to believe that some unfair advantage had been taken of the witness, and that he was not bound thereby. The error seems too palpable for

further argument. Kramer v. Gardner, 116 N. W. R. 925; American Soda Fountain Co. v. Hogue, 17 L. R. A. (N. S.) 1116.

It is contended by the appellants that the court erred in allowing the plaintiff to give testimony modifying and changing the terms of a written contract by parol evidence. Assignments 7, 29, 30, 45, 47 to 50, inclusive, 60, 73, 74, 75, 77, 78 and 79 relate to the admission of testimony attempting to vary and change the terms of written contracts that are not sued upon in his case; are not real issues therein, and should not have been received or considered and were inadmissible under the pleadings. We assign ten errors upon the insufficiency of the evidence, but we will at this time only call the court's particular attention to a few of them.

Assignment 2 (Fol. 278) relates to the fact that the undisputed evidence shows that the defendants were in lawful possession of the span of bay geldings at the time of the bringing of this action, and that they had obtained lawful possession of them prior thereto, and no change in the conditions awarding the change of possession to any other person had occurred. (See Abs. Fols. 51, 70, 72, 73, 99 and 212.)

Assignment 3 relates to the fact that plaintiff's Exhibit "A" never became operative, because it was not signed by J. E. Rowe. (Abs. Fol. 207.) The record further shows that the plows worked in a manner that was satisfactory to the plaintiff. (Abs. Fol. 208.) Even if Exhibit "A" never became operative, there is sufficient evidence to support our position that the plows were really satisfactory to the plaintiff.

The record further shows that if Exhibit "A" ever did become operative, the engine pulled the eight plows continuously in a good and workmanlike manner, plowing at a depth of from five to six inches. (Abs. Fols. 116, 146, 153, 166, 172, 177, 186, 189, 191 and 202.)

The undisputed evidence further shows, as set forth in assignment 7, that the plaintiff never attempted to give the engine a fair trial, so far as he was concerned, but that he was endeavoring to find some way to escape from his obligations. (Abs. Fols. 153, 166 and 172.)

Defendants requested a further instruction that if Exhibit "A" became operative, and the engine did not fulfill its requirements,

that plaintiff had no right to return or offer to return both plows and engine and demand his horses, because he had already accepted the plows and found them satisfactory. (Assignment 107.)

Assignment 111 relates to another instruction of the same character given by the court to the jury, and therein the court calls particular attention that the provisions of Exhibit "A" relative to being signed by all of the parties, could be modified and the signature of Rowe waived, and that if the parties who did sign the exhibit afterwards acted under its provisions, it would be binding upon them. This is also argumentative in its character; calls particular attention to certain facts and impresses the jury with the idea that they are to so find.

Assignment 112 is subject to the same objection. The court said: "The trial of the engine mentioned in Exhibit 'A' should be a fair and bona fide trial on the part of both Mr. Harris and Lyons Bros., and in the manner provided in Exhibit 'A,' and it is for you to determine from all of the evidence whether this engine after a fair trial, did or did not meet with the requirements of Exhibit 'A.' "

*Roy T. Bull,* for Respondent.

The action being to recover specific property, or the value thereof in case the possession cannot be had, it is only necessary to allege in the complaint the ownership or special interest of the plaintiff, his right to possession, the wrongful possession by the defendant, a demand for such possession and the refusal thereof, and the value of such property. Towne v. Liedle, 10 S. D. 460 (74 N. W. R. 232.) ; Smith v. Wisconsin Inv. Co., (Wis.) 89 N. W. R. 829; Kimmitt v. Deitrich, 22 S. D. 590 (119 N. W. R. 986) Humpfner v. D. M. Osborne & Co., 2 S. D. 310 (50 N. W. R. 88.) ; Turpie v. Flagg, (Ind.) 22 N. E. R. 743, 34 Cyc. 1464.

The evidence which was objected to by counsel under assignments 50, 51, 73 to 76, was proper to show that Rowe had no interest in the horses, and that Harris was the owner thereof.

The greater number of the assignments, however, go to the introduction of the contract Exhibit "A," and the acts done thereunder.

The evidence showing that Harris was the owner and the former possessor of the team, it was proper and necessary to show, under the allegations, how he parted with such possession,

and ,if the defendants came rightfully into possession, why such possession later became unlawful.

"Either plaintiff or defendant may introduce evidence tending to show any property interest from which a right to possession arises, when they have alleged ownership generally without specifying the source of title, or have denied the adverse party's right to possession." 34 Cyc. 1497.

"A general allegation of ownership and right of possession, is sustained by proof of any interest in the property which confers the right to possession." 34 Cyc. 1500.

It is contended by counsel that this contract, Exhibit "A," not having been signed by Rowe, never took effect. The evidence is conflicting upon this proposition, the respondent claiming that after the contract was signed by Lyons Bros. and Harris, the signature of Rowe was expressly waived. (Fols. 91, 92, 109, 129 to 132.) On the other hand, one of the appellants testified that he left the office where the contract was signed immediately after the signing of the same. (Fol. 148.) Owing to this testimony on the part of one of the appellants, he was, upon cross-examination, closely examined as to his recollection of the transaction, and his attention called to certain conversations alleged by respondent to have taken place after such signing, to refresh his memory. We believe that this was proper.

"Whether competent or not, it is immaterial, as the conversation in no way revealed anything material to the case." Grant v. Powers Dry Goods Co., (S. D.) 121 N. W. R. 95.

Appellants having agreed to surrender the possession of the horses unless the "engine would pull continuously in a good and workmanlike manner said gang plows when plowing with eight bottoms at a depth of from four to six inches," (Fol. 209) and it being under this agreement that respondent claimed to recover possession of said team, we believe it was proper to show that appellants by themselves and experts in their employ did undertake to run and operate the engine according to this agreement; that it did not pull the plows continuously, but that much time was lost in the operation thereof; the amount of time so lost each day, and the depth of the plowing.

Evidence as to the amount of gas used in the operating was proper to show that the engine did not pull in a "good and work-

manlike manner," but required an amount which would pull the plows as contemplated in the subsequent agreement, as corroborative of the evidence of such subsequent condition.

If, during the course of the trial, certain of the evidence admitted in behalf of the plaintiff on his direct case should be held by this court as improper at such time, but admissible in rebuttal, we do not believe such error sufficient for a reversal without some showing wherein the appellants might, at least, have been prejudiced.

It cannot be contended by appellants that they were prejudiced by the reception of this evidence, as they were aware by what right the respondent claimed the possession of the property, as evidenced by their answer. Not having been misled, the varience, if any, between the allegations and the proof is not material. Revised Code of Civil Pro. No. 146.

"Prejudicial error is such error as in all probability must have produced some effect upon the final result of the trial, namely, the result of the jury." State v. Pirkey, (S. D.) 124 N. W. R. 713.

SMITH, J. Action in claim and delivery to recover possession of a team of horses of the alleged value of $200. Verdict and judgment for plaintiff. Defendants appeal from the judgment and an order overruling motion for a new trial.

A brief statement of the pleadings and of the evidence offered at the trial is necessary to an understanding of the errors assigned and discussed in appellants' brief. The complaint is in the ordinary form in claim and delivery. The answer denies that the plaintiff is the owner of or entitled to the possession of the property, and the wrongful detention thereof. The answer further alleges that about August 25, 1910, plaintiff and one J. E. Rowe purchased of Nichols & Shepard Company, by written contract, a Hart-Parr traction engine, secondhand, and a ten-bottom Deere engine gang plow; that said purchasers were the owners at the time of the team of horses described in the complaint, and contract, and agreed to turn in said team as a part payment of the purchase price of the outfit, and that this was the only part of the purchase price to be paid at the time of the delivery of the rig to Harris and Rowe; that said rig was delivered to plaintiff and Rowe under said contract; that immediately after the execution of

said contract the same was assigned and transferred by Nichols
& Shepard Company to the defendants, Lyons Bros., who ever
since have been and now are the owners thereof; that after Har-
ris and Rowe had secured possession of the rig they refused to de-
liver possession of the horses; that thereupon Lyons Bros., on the
12th day of September, 1910, began an action against Harris and
Rowe to recover possession of said horses; that Harris and Rowe
appeared in the action on the 13th day of September, 1910, and,
pursuant to written stipulation then made, the controversy was
settled, and the horses in dispute were turned over to Lyons
Bros., and the action dismissed; and that defendants thus came
into, and ever since have been, in lawful possession of said horses.

To this answer plaintiff served and filed a reply, admitting the
purchase of the rig, but alleging that the signatures to the writ-
ten agreement of sale made at the time were obtained by false and
fraudulent representation as to the ownership of the property and
the contents of the instrument; and further alleging that at the
time of said sale it was represented that all of said machinery was
in good first-class working condition and would do good work;
and it was agreed that when said machinery was shown to be in
a good, satisfactory condition and able to do the work for which
it was intended, and plaintiff had learned to operate the same, set-
tlement should be made and the horses delivered; that said condi-
tions and agrements were fraudulently omitted from the written
agreement of purchase and sale; that said rig was delivered to the
plaintiff who attempted to operate said engine and plows with the
assistance of divers persons skilled in running such machinery, but
that same could not be operated and refused to plow; that plain-
tiff notified defendants that he would not accept the same or
make settlement therefor; that thereupon defendants brought ac-
tion of claim and delivery for the recovery of possession of said
horses; that while said action was pending defendants represented
to plaintiff that said engine was then in good working condition
and would do good work, and if plaintiff would then give said
engine a second trial, in case the same did not prove satisfactory,
the defendants would take the same back; that defendants would
discharge the action in court and furnish a competent person to
operate said engine, and that the horses should remain in posses-
sion of defendants until said engine was given such trial; that,

pursuant to said agreement, an instrument was drawn up in writing and signed by plaintiff and defendants, and the pending action dismissed by stipulation. The written instrument referred to is in the following language:

"Exhibit A.

"Whereas Lyons Bros., of Redfield, S. D., parties of the first part, did, on Aug. 25, 1910, sell and deliver to Frank Harris and J. E. Rowe, parties of the second part, one 10-bottom Deere stubble gang plow and one second-hand 22-45 H. P. gas engine of Hart-Parr make, together with such equipment as is mentioned in the written contract made between the parties hereto on said date; and whereas, the plows are satisfactory to the second parties, but they have not had sufficient opportunity to test said engine and ascertain if it is according to contract: Wherefore it is agreed that second parties may have three days to test said engine, as follows: That said engine will pull continuously in a good and workmanlike manner said gang plows when plowing with eight bottoms at a depth of from four to six inches deep; that if after using said engine for a period of three days it should prove unable to do said work as aforesaid, first parties agree to take the same back and surrender the span of horses this day delivered to them by second parties. If said engine does said work as aforesaid, then second parties agree to sign the notes described in the contract of Aug. 25th, and fully perform all the terms therein contained. It is also agreed that said test of said engine shall be made as soon as first parties furnish a competent engineer to run said engine for said test; that said engineer shall be paid by first parties, but second parties shall board him and shall pay for all gas and oil used in making said test. If said contract is closed as aforesaid, first parties agree to furnish an engineer for an additional three days to run said engine for second parties free of charge, except second parties shall board him. This contract shall not supersede the contract made on Aug. 25, 1910, but shall be considered as supplementary thereto, and shall not become binding until all of the parties above named have signed the same. Replevin action between these parties to be dismissed at cost of first parties. Dated Sept. 14th, 1910. Lyons Bros., by B. F. Lyons. Frank Harris."

The reply further alleges that after this written agreement was

entered into defendants furnished divers persons skilled in the operation of traction engines and plows, who attempted to operate said machinery, but that the same refused to work, and such persons were compelled to abandon attempts to operate the same; that after said machinery was thus fully tried and found unfit for work plaintiff notified defendants that he would not accept same, and demanded the return of the horses, which demand was refused.

At the trial plaintiff was sworn as a witness in his own behalf, and, in substance, testified that on the 25th of August, 1910, he was the owner of the team of horses in controversy; that he had a conversation about that time with the defendants in regard to buying the gasoline engine and plowing outfit; that on or about the 14th of September, 1910, he had another conversation with Barney Lyons concerning the horses, which conversation took place at his counsel's office; that he then signed the agreement with Lyons Bros., marked "Exhibit A," and that Barney Lyons signed the same, on behalf of the firm of Lyons Bros., at the same time. Exhibit B was then shown to the witness, who testified that it was the paper referred to in Exhibit A; that the first time he saw Exhibit A thereafter was on August 25th at Lyons Bros.' office. Exhibits A and B were offered and received in evidence over defendants' objection. Plaintiff was thereupon interrogated by his counsel at great length, and, over numerous objections and exceptions, was permitted to testify concerning attempts made after September 14, 1910, by himself and the defendants and certain experts to make the machinery do satisfactory work, which attempts, he testified, were failures. The witness was further permitted to testify, over proper objections, that at the time of the original agreement for purchase of the property Lyons Bros. inquired of Harris what security he wanted to give, and that "Mr. Rowe volunteered and spoke up and said, 'I will go on the note with him;'" that Mr. Rowe's statement was made in response to the inquiry of Barney Lyons about security. The written instrument, Exhibit B, signed by Harris and Rowe and Lyons Bros., referred to in Exhibit A, is set out in the record on this appeal as follows: "Exhibit B is an order, signed by Frank Harris and J. E. Rowe, running to Nichols & Shepard Co. for a traction engine, a set of plows, and other property, which they agree shall be secondhand machinery, and for whiih they agree to pay as fol-

lows: One bay span of geldings; one note for $700, due Nov. 1, 1911; one note for $700, due Nov. 1, 1912; one note for $600, due Nov. 1, 1913. With interest on notes at 6 per cent. per annum. Contract is dated August 25, 1910"—and not otherwise.

In the assignments of error in the record, appellants specify 11 particulars in which the evidence is alleged to be insufficient to sustain the verdiit, 100 assignments of error in rulings on evidence, and 21 assignments of error in refusing instructions requested by defendants' counsel and errors in instructions given the jury, and in refusing to set aside the verdict and grant a new trial.

[1] It is manifestly impossible to consider these assignments of error seriatim. The case was tried upon the issues raised by the complaint, answer, and reply. At the trial plaintiff apparently deemed it incumbent upon him to present the entire transaction covered by the allegations contained in the complaint, answer, and reply. And many of the rulings upon the introduction of evidence complained of and assigned as error are upon objections founded upon the theory that under the complaint the plaintiff should not be permitted to prove the entire transaction, but should have been confined to the allegations of the complaint in claim and delivery. It is plainly aparent that the plaintiff was not required and should not have been permitted in his main case to present proof of the entire transaction between the parties. He should have proved his ownership of the horses, demand for possession of the same, and the refusal of the defendants to surrender possession, and rested his case. Defendants then could have introduced evidence of the transaction pleaded in the answer, and plaintiff, without any reply, would have been at liberty to prove all the facts alleged in his reply connected with the transaction set out in the answer. This would have been the appropriate procedure. But, had this procedure been followed, the evidence before the court and jury could not have been other or different from that offered and received on the trial, and contained in the record; and we are wholly unable to perceive in what way appellants could be or have been injured or prejudiced by the irregular course actually pursued, and, unless injury or prejudice to defendants' rights have in some way resulted, this court would not be justified in granting a new trial. Apparently appellants' counsel treated the reply as proper pleading in the case. No motion

was made to strike it out. The reply itself merely advised defend-
ants of facts by means of which the plaintiff might seek to avoid
the matters of defense pleaded in the answer.

It seems to us, therefore, that when the plaintiff assumed the
burden of proving the entire transaction in the first instance it
was distinctly to the advantage of defendants, rather than to their
injury. No further attention will therefore be paid to the nu-
merous assignments of error upon rulings on the introduction of
evidence, in which the objections are predicated upon this alleged
irregularity in procedure. At the trial no attention was paid by
either party to the terms and conditions of the memorandum of
agreement, Exhibit B, originally entered into between Harris and
Rowe and Nicholas & Shepard Company, which was assigned to
the defendants, Lyons Bros. No attempt appears to have been
made by the plaintiff to prove that this agreement was procured by
fraud or artifice, as alleged in the reply. The entire case seems
to have been upon the theory that the rights of both parties were
wholly fixed and determined by the stipulations and agreements
contained in Exhibit A, the supplemental contract.

It is appellants' contention, however, that the supplemental
contract was never in force, inasmuch as it was never signed by
J. E. Rowe, one of the parties named therein, because it contains
an express stipulation that it "shall not become binding, unless all
of the parties above named have signed the same." At the trial
plaintiff sought to show that after the execution of the contract,
Exhibit A, by Lyons Bros. and Harris the signature of Rowe
thereto was waived, and that defendants are not now in a posi-
tion to insist upon the invalidity of the contract for that reason.
Plaintiff while upon the witness stand, was asked the following
question: "I will ask you whether or not you had a conversation
with Barney Lyons in my office on September 14, 1910, after you
had signed Exhibit A, in reference to Mr. Rowe's signing the
same? (Objected to as incompetent, inadmissible under the plead-
ings, tending to vary the terms of the written instrument, no pro-
per foundation laid. Overruled. Exception.) Answer: He said
they were binding on himself and me, but not on Mr. Rowe; but
he said: "That don't make any difference whether Rowe signs it
or not. If that engine don't go out and give thorough satisfaction,
I will pull it in, and he can have his horses. I don't want Mr..

Rowe to have something that he can't use. It is worth the money.' (Motion to strike out the answer denied. Exception.)"

Plaintiff also, over proper objections and exceptions, was permitted to introduce certain evidence tending to show that Rowe had no interest in the transaction, other than as a surety on the original contract, Exhibit B. It is quite clear that, unless this evidence was properly received and was sufficient to constitute a waiver of the condition in the contract, Exhibit A, requiring the signature of all the parties named therein, before the same became binding, the contract was ineffective, and could not have been properly received in evidence for any purpose.

[2] The first question presented is whether the contract was properly received in evidence over defendants' objection that it was incompetent under the allegations of the pleading. The contract, Exhibit A, was fully set out in plaintiff's reply. The condition requiring the same to be signed by all the parties named therein, before the same should become binding, was disclosed by the pleading itself. The plain object of this reply was to defeat the matters pleaded in the answer. The original contract, as set out in the record, contained no condition or provision under which the plaintiff would be entitled to a return of the horses. It contained neither warranty nor any condition entitling the plaintiff to a trial of the plowing rig, and a return, should it prove unsatisfactory. It is clear, therefore, that plaintiff's entire right to a return of the horses depended upon the terms and stipulations contained in this contract, Exhibit A. Upon its face, in the absence of further allegations, this contract was not binding upon the parties named therein, because the contract itself disclosed that it was not signed by Rowe. Barber v. Burrows et al., 51 Cal. 404; Waggeman v. Bracken, 52 Ill. 468.

[3, 4] If this contract ever became binding upon the defendants, it was because of statements and acts of such character as to constitute a waiver of this condition in the contract operating as an estoppel to assert its invalidity. It will be observed that the plaintiff''s reply, although it sets out the contract in full fails to allege any of the facts which might be claimed to constitute such an estoppel. The only objection pertinent to the pleading which was made to the evidence offered and received to prove these facts is that the same was inadmissible under the pleadings. Such an ob-

jection does not disclose the grounds of the objection, which, if properly stated, would have been that such evidence was inadmissible, because no estoppel had been pleaded. The objection in the record, therefore, under the well-settled rule of this court, presents no question for review, and the evidence must be considered as having been properly received. Had the grounds of the objection been properly stated, thus advising plaintiff, he might, if necessary, have amended his reply by pleading an estoppel in connection with the contract itself. We must presume in support of the judgment that the jury found the facts thus testified to as claimed by plaintiff.

[5] The question then presented is whether defendants should to held estopped by their statements and acts, in connection with the stipulations in the contract, from asserting its invalidity. The statements of the defendant Barney Lyons were to the effect that it did not make any difference whether Rowe signed the contract or not; that it was binding on himself and plaintiff in any event; and, acting apparently on these statements, plaintiff and defendants then proceeded to carry out the stipulations of the contract as to a trial of the engine and plows—the defendants furnishing an engineer to run the engine for the test, and continuing to run the same during the three days specified in the contract. It also appears that Barney Lyons said they relied upon the liability of Rowe upon the original contract, and not upon the supplemental contract.

Upon these facts we are clearly of opinion the defendants should now be held to have waived the signature of Rowe to the latter contract, and should be held estopped to assert its invalidity upon this appeal.

Appellants, in their brief, discuss at some length the right of rescission upon a breach of warranty, and the necessity of a return or offer of return of the property warranted. No question of a breach of warranty or of rescission is presented by the record upon this appeal.

[6] Under the specifications of insufficiency of evidence to sustain the verdict, appellants' counsel say the record shows the plows worked satisfactorily to the plaintiff, and that the engine worked continuously in a good and workmanlike manner, pulling eight plows at a depth of from five to six inches; that plaintiff

never attempted to give the engine a fair trial, but was endeavoring to find some way to escape from his obligations under the contract. The evidence relating to all these matters was conflicting, and was for the jury, and, we think, was fairly and fully submitted by the instructions given them. They were instructed that "the trial of the engine mentioned in Exhibit A should be a fair and bona fide trial on the part of both Mr. Harris and Lyons Bros., and in the manner provided in Exhibit A; and it is for you to determine from all of the evidence whether this engine, after a fair trial, did or did not meet with the requirements of Exhibit A (and by Exhibit A, whenever referred to, is meant the white paper, dated September 14, 1910, signed by Lyons Bros., by B. F. Lyons, and Frank Harris). If the engine, after a fair trial, did meet the requirements of Exhibit A, then plaintiff cannot recover." The court also instructed the jury: "According to the terms of Exhibit A, it was not to become operative until all the parties thereto had signed same, and you are instructed that this provision is binding on all parties; but you are further instructed that this provision could, after the instrument was signed by Lyons Bros. and Harris, be modified, and the signature of Mr. J. E. Rowe could be waived; and if the parties who did sign Exhibit A afterwards changed same, or waived the signature of Rowe and went on and acted under the provisions of Exhibit A just as if Rowe had signed it, and knowing that he had not signed it, then the provisions of Exhibit A are binding on the parties who did sign it. * * * "

This instruction states the law correctly, as we view it, and under it the questions of fact were determined by the jury in favor of respondent. We cannot disturb the verdict. Defendants requested the court to instruct the jury "that if Exhibit A became operaive, and the engine did not fulfill its requirements, that plaintiff had no right to return or offer to return both plows and engine and demand his horses, because he had already accepted the plows and found them satisfactory." Such an instruction would not be warranted by anything contained in the record, and was properly refused. It was clearly the intention of the parties to the contract that the engine and plows were to be used together, and not otherwise. 35 Cyc. 115 (b), and cases cited.

[7] The witness Rowe, party to the contract, was permit-

ted to testify, over appellants' objections, that it was stated at the time the rig was purchased through Lyons Bros. that Harris was the purchaser, and that the witness did not receive any consideration for signing the contract. Whether Rowe received any consideration was wholly immaterial to any issue in the case, and the objection should have been sustained; but Rowe is not a party to this action, and the question of his liability could in no way affect the defendants, except in so far as it might throw light on their intent to waive the condition in the contract requiring the signatures of all parties thereto. The evidence was not prejudicial to appellants, even if improperly received. We have considered all the assignments of error, and have carefully examined the whole evidence; and, even though the verdict of the jury might be different from that which the court would have found, yet the facts are for the jury to decide, and we find in the record sufficient evidence to sustain the finding, if believed by them to be true.

We find no reversible error in the record. The judgment and order of the trial court are therefore affirmed.